IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| JANE BROWN, | ) | CASE NO. 13-70356 |
| | ) | |
|     Debtor. | ) | |

| | |
|---|---|
| JUDY A. ROBBINS, | ) |
| UNITED STATES TRUSTEE | ) |
| FOR REGION FOUR, | ) |
| | ) |
|     Movant | ) |
| | ) |
| v. | ) |
| | ) |
| MARK JENNINGS, | ) |
| | ) |
|     Respondent. | ) |

## MEMORANDUM DECISION

The matter before the Court is the United States Trustee's "Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 110, 526, and 527 Requiring the Disgorgement of Fees Received, Payment of Damages to the Debtor, and Imposition of Fines"[1] (the "Motion"). The specific relief requested is that this Court enter an order

> (i) requiring Mark Jennings and/or Financial Associates Enterprise Marketing, Inc. (the "BPP") to disgorge the fees received from the above-referenced Debtor; (ii) requiring the BPP to pay the Debtor damages of not less than $2,000.00; and (iii) imposing fines of $500.00 against the BPP for each and every violation of § 110(b), (c), (e), and/or (h) of the Bankruptcy Code.

---

[1] Filed in this case on July 25, 2013 as docket entry no. 57.

In support of the Motion the United States Trustee has offered twenty-two exhibits, all of which have been admitted into evidence over the Respondent's objection for reasons stated on the record at the hearing upon the Motion. In addition counsel for the United States Trustee has requested that the Court take judicial notice of all of the filings in Ms. Brown's cases filed with the Court, which the Court has agreed to do. Mr. Jennings denies that he has operated as a bankruptcy petition preparer or that he has done anything wrong. On the basis of the findings of fact and conclusions of law made below, the Court will partially grant the Motion.

FINDINGS OF FACT

From the evidence and filings in this case it appears that Mr. Jennings is the owner and president of Financial Associates Enterprise Marketing, Inc. ("Financial Associates"). There appears to be no meaningful distinction between them, and Mr. Jennings has not made any contention to the contrary. Financial Associates holds itself out in the Retainer Agreement signed by Ms. Brown to be a provider of various kinds of financial services, such as payment of bills, "credit repair," "administrative processing of home loans," and "asset management."[2] Other than the use of the murky term "credit repair," there is no suggestion, either express or implicit, that any bankruptcy assistance will be provided. When asked though by the Court as to what services Mr. Jennings had provided to her, Ms. Brown stated only that he had tried to help her save her home and her car from being lost due to payments she had missed on her financial obligations after her husband had died. Indeed it appears that she really had no property of consequence other than her home and her car for anyone to "manage." Mr. Jennings attempted

---

[2] *See* U.S. Trustee's Exhibit 19 bearing the date of January 15, 2012.

to help Ms. Brown in two ways, at least so far as the evidence discloses, principally, to seek a loan modification of her mortgage upon her home, and secondarily, to prevent SunTrust Mortgage from moving forward with foreclosure while the loan modification effort was being pursued. As Mr. Jennings stated to the Court in his argument at the final hearing of this matter on December 30, 2013, an order from a bankruptcy court is the only thing a mortgage lender will "respect."

During the time that Mr. Jennings has been working with Ms. Brown, she has filed three bankruptcy petitions under Chapter 13 of the Bankruptcy Code in this Court: Case No. 11-72524 filed on December 16, 2011; Case No. 12-71971 on October 31, 2012; and the present case filed on March 7, 2013. In none of these cases did Ms. Brown file her bankruptcy schedules, statement of financial affairs or a Chapter 13 Plan, nor did she pay the filing fee. In only one of these cases, the first, has her required "Statement of Debtor as to Assistance by Non-Attorney in Regards to Preparing and Filing Petition" indicated that she has received any assistance in preparing her petition. In that case her statement indicated that she had received assistance from "Financial Associates Enterprise" but that she had paid nothing for such assistance.[3] The corresponding "Statement of Assistance by Bankruptcy Petition Preparer" for that case is signed by Mr. Jennings on behalf of "Financial Associates Enterprise" and confirms that no compensation had been or was to be paid for the assistance it had provided. In the two subsequent cases Ms. Brown has signed and filed with the Court certifications that she had received no assistance in the preparation of her petition. During proceedings on the Motion in the present case, Mr. Jennings has taken the position that the statements filed in the first case,

---

[3] U.S. Trustee's Exhibit 13.

that Financial Associates had provided assistance and had acted as a bankruptcy petition preparer, were erroneous and that in fact neither he nor his company had functioned as a bankruptcy petition preparer within the meaning of § 110 of the Code with respect to Ms. Brown.  In essence, Mr. Jennings' position is that he did not prepare any document for filing but simply informed Ms. Brown of her bankruptcy option, gave her blank official bankruptcy forms, just as one of the Court's deputy clerks might do, which she completed, and accompanied her to the Clerk's Office for the filing of the petition.

In reaction to the Debtor's deficient filing history, on March 12, 2013 the United States Trustee filed a Motion for Sanctions (the "Sanctions Motion") seeking this case's dismissal as constituting an abusive filing and an order barring the Debtor from filing any new case in this Court for a period of one year.  At the initial scheduled hearing on that motion on April 8, 2013, the Debtor did not appear but Mr. Jennings did appear, identified himself to be Ms. Brown's "asset manager," advised the Court that the Debtor was ill and requested a continuance.  A continuance was granted to April 22, 2013.  The Chapter 13 Trustee subpoenaed Mr. Jennings as a witness for such hearing.  Upon his request for a new continuance due to another scheduled court appearance, the Sanctions Motion was continued again to May 13, 2013 and then yet again to May 28, 2013.  At the continued hearing both the Debtor and Mr. Jennings testified.  At that point counsel for the United States Trustee and counsel for the Chapter 13 Trustee jointly requested that the Sanctions Motion be continued to permit the filing of a motion with respect to the activities of Mr. Jennings assisting the Debtor in the filing of her case. Thereafter, the initial version of the Motion was filed on May 31, 2013 and also set for a hearing on July 8, 2013.  This document, to which Mr. Jennings failed to file a response, contained a

clerical error in the body of the Motion regarding the name of the Respondent, which was corrected by the Amended Motion filed on July 25, 2013. At the July 8 hearing the United States Trustee, with the consent of the other parties in interest, requested that the hearing upon both the Sanctions Motion against the Debtor and the Motion against Mr. Jennings be continued to July 22, 2013. An order to such effect was entered on July 9 requiring both respondents to produce certain documents subpoenaed by the United States Trustee and to appear back before the Court on July 22. On that date evidentiary hearings were held with respect to both motions and the Court granted the Sanctions Motion with respect to the Debtor, but deferred dismissal of the case until the Motion against Mr. Jennings could be resolved. On August 2, 2013 this Court entered an order (docket entry no. 62) effectuating its ruling at the hearing upon the Sanctions Motion and providing, in part, as follows:

> 1. Upon resolution of all matters pending in this case, that this case be dismissed. Notwithstanding the deferral of entry of the Court's standard dismissal order pending resolution of any pending matters in this case, the automatic stay shall terminate as to any creditor action against the Debtor, property of the Debtor or property of the bankruptcy estate upon entry of this order.
>
> 2. That the debtor be prohibited from filing any *pro se* bankruptcy petition subsequent to the entry of this order and continuing for a period of 365 days from the date of the Order dismissing this case. Should the debtor retain counsel who is properly admitted to practice law to assist her with her bankruptcy filing, this bar does not apply.

(emphasis in original removed showing Court's additions to proposed order tendered by counsel for the United States Trustee).

At that July 22nd hearing both the Debtor and Mr. Jennings testified. Ms. Brown, in response to questions from counsel for the United States Trustee, testified that Mr. Jennings

had prepared the document filed with the Court in this case listing her mortgage lender as her sole creditor. Similar documents were filed with the petitions in the first two cases. Although the mortgage lender was the only creditor listed, the Debtor also testified that at the time she filed she also had a car loan and a credit card debt but that she was handling these obligations satisfactorily. The Court finds on the basis of this testimony that, at a minimum, Mr. Jennings prepared the creditor disclosure for the purpose of filing with the petition initiating this case with the intention that the mortgage lender's foreclosure effort then underway would be aborted. That finding is sufficient to resolve the basic issue before the Court and there is no need for it to make an assessment of other evidence in the nature of comparison of handwritten lettering on the Debtor's petition in this case with printing contained in other documents, including the pro se petition which Mr. Jennings filed on his own behalf in this Court [Exhibit no. 12], shown to have been prepared by Mr. Jennings. On the basis of this finding, the Court further finds that Mr. Jennings committed two deceptive acts in connection with the filing of the petition in this case: (1) listing only the mortgage lender as a creditor in this case when he was aware of Ms. Brown's other debts, and (2) instructing Ms. Brown to file a certification in this case to the effect that she had not received any assistance with the filing. Ms. Brown has testified several times at hearings at which Mr. Jennings was present and also testified, including the final hearing held on the Motion on December 30, 2013.[4] Without exception she has struck the Court as a very nice lady, but one who has put her faith in Mr. Jennings to deal with her financial problems and has been

---

[4] Numerous continuances were granted following the July 22nd hearing to permit resolution of discovery issues and to provide an opportunity for Mr. Jennings to secure legal counsel, which he proved either unwilling or unable to obtain at any time during the pendency of the Motion.

dependent on him to guide her as to what to do and how to do it. She did not follow up on the opportunity provided to her to consult with a Legal Aid attorney with respect to her case in general and the Sanctions Motion in particular. She testified at the May 28 hearing that Mr. Jennings had advised her to file a Chapter 13 bankruptcy petition in this case. At that hearing Mr. Jennings also testified as follows in response to a question from the Court:

> THE COURT: All right, Mr. Jennings, I'm going to ask you a couple questions just about this particular case. From the testimony that Ms. Brown gave just before you got here, it's obvious that she relies a lot on your help to deal with her financial problems. Of course, you are aware that she filed this case in this court. She testified before you got here when she was asked - she answered the question that she filed a Chapter 13 based on the advice that you gave her. Would you agree with that or not?
>
> THE WITNESS: Yes, sir.

Hr'g Tr. 57: 7-18, May 28, 2013. While this exchange occurred in a hearing upon the Sanctions Motion against the Debtor and prior to the filing of the Motion now under consideration by the Court, it will be utilized in deciding the present matter as constituting an admission by Mr. Jennings.

Exhibit 15 offered by the United States Trustee, consisting of twelve pages of Financial Associates account statements rendered to the Debtor, indicates that Ms. Brown paid to Financial Associates a minimum of $875, but probably $250 more, during the twelve month period preceding the filing of this case on March 7, 2013. It further shows that she made three additional payments to that company in the months of March, April and May after the filing of this case and as of June 15, 2013 had an indicated account balance of $125 still owing. These amounts were paid pursuant to the Retainer Agreement entered into between the Debtor and Financial Associates on January 15, 2012. U.S. Trustee Exhibit 19. There was no apparent

7

allocation of the fixed amounts payable monthly under the terms of that agreement between the services related to the efforts to obtain a modification of the mortgage loan and those related to the two bankruptcy petition filings which occurred during the time that such agreement remained in effect. It is clear, though, that Mr. Jennings did what he did with respect to the Debtor's two most recent bankruptcy filings because he was compensated for general services which included as a critical element the filing of those two petitions. Ms. Brown has testified before the Court that she has been satisfied with the services provided by Mr. Jennings and that she ultimately did obtain a modification of her mortgage loan with his assistance which has enabled her to keep her home. She has given no indication whatsoever that she feels entitled to a refund of any moneys she has paid Financial Associates for Mr. Jennings' services.

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. The Court further concludes that determination of the Motion constitutes a "core" bankruptcy proceeding within the meaning of 11 U.S.C. § 157(b)(2) because any court has the inherent authority to regulate the conduct of cases filed in such court and the activities of those representing a party in such case as an attorney or otherwise assisting a party in a quasi-legal capacity, particularly with respect to pleadings filed in that court. Furthermore the Bankruptcy Code explicitly imposes restrictions upon the activities of such service providers in §§ 110 (bankruptcy petition preparers) and 526, 527 and 528 (debt relief agencies).

Section 110(a)(1) of the Code defines a "bankruptcy petition preparer" to be "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing" in a bankruptcy case. Other subsections of § 110 impose various requirements upon bankruptcy petition preparers and the documents they prepare for filing and provide for significant sanctions if such requirements are not observed. One of those sanctions is a requirement that the court, upon a finding that a bankruptcy petition preparer has violated § 110 or committed "any act . . . [determined to be] fraudulent, unfair or deceptive," to order the bankruptcy petition preparer to pay to the debtor -

> (A) the debtor's actual damages;
> (B) the greater of -
> > (i) $2,000, or
> > (ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and
> (C) reasonable attorneys' fees and costs in moving for damages under this subsection.

§ 110(i)(1).

The United States Trustee, as a part of the relief sought in her Motion, seeks an order "imposing fines of $500.00 against the BPP for each and every violation of § 110(b), (c), (e), and/or (h) of the Bankruptcy Code." Subsection (b) requires, in general terms, that the bankruptcy petition preparer sign the document prepared for filing and print on it the preparer's name and address, and that before any document is prepared for filing the preparer shall "provide to the debtor a written notice which shall be on an official form prescribed by the Judicial Conference of the United States in accordance with rule 9009 of the Federal Rules of Bankruptcy Procedure," which is intended to assure that the bankruptcy debtor understands that the preparer

9

is not an attorney and may not give legal advice.  Such form must be signed by both the preparer and the debtor and filed with the document prepared for filing.  Subsection (c) requires the preparer to place on the document prepared for filing the Social Security account number of the preparer, or if the preparer is not an individual, the Social Security account number of the "responsible person" of the preparer.  Subsection (e) prohibits a preparer from executing a document on behalf of a debtor and from undertaking to give the debtor any legal advice.  Lastly, subsection (h) authorizes the Supreme Court or the Judicial Conference of the United States to establish guidelines for the determination of maximum allowable fees which a preparer may charge and requires the preparer to disclose "any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fees charged to the debtor."  The enforcement of these requirements is provided for in § 110(l), which states that a preparer "who fails to comply with any provision of subsection (b), (c), (e), (f), (g), or (h) may be fined not more than $500 for each such failure.  § 110(l)(1).  If, among other things, the Court determines that a preparer "prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer[,]" the court "**shall triple** the amount of a fine assessed under paragraph (1)."  § 110(l)(2)(D) (emphasis added).

        The term "debt relief agency" is defined in § 101(12A) of the Code to mean "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110,"[5] but excluding, as arguably relevant to the matter currently before this Court, "(A) any

---

[5] Section 101(3) of the Code defines the term "assisted person" to mean "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $175,750."

person who is an officer, director, employee, or agent of a person who provides such assistance or of the bankruptcy petition preparer[.]" So, under the definition it seems that a bankruptcy petition preparer is also a "debt relief agency" but the latter may or may not be a bankruptcy petition preparer. For a specific example, an attorney representing a consumer debtor who qualifies as an "assisted person" is a "debt relief agency" but cannot be a bankruptcy petition preparer within the meaning of § 110, which limits its scope to non-attorneys. The practical consequence of these rules as pertinent to the Motion is that if the evidence is sufficient to make Financial Associates or Mr. Jennings a bankruptcy petition preparer, it automatically subjects the entity or person so determined to the additional rules and potential sanctions contained in §§ 526 - 528 of the Code.[6] If a debt relief agency is determined to have "intentionally or negligently" violated any provision of §§ 526, 527 or 528, such entity shall be liable

> to an assisted person in the amount of any fees or charges in connection with providing bankruptcy assistance to such person that such debt relief agency has received, for actual damages, and for reasonable attorneys' fees and costs[.]

The United States Trustee has requested that the Court take judicial notice of its dockets in the three cases filed by Ms. Brown and the Court has agreed to do so. The Court concludes that the facts that various filings are indicated to have been made in these cases, as

---

[6] The Court acknowledges that this may not be the only reasonably possible interpretation of the definition of "debt relief agency," particularly in light of the fact that § 526(c) setting forth the remedy against a debt relief agency ties back to liability "to an assisted person," which would seem to suggest that a bankruptcy petition preparer can only be liable under § 526 to a debtor who is an "assisted person." In this case the United States Trustee has established that the Debtor is an "assisted person" and therefore the intriguing question whether a "debt relief agency" which qualifies as such solely by reason of having been determined to be a bankruptcy petition preparer could be liable to a client who does not meet the definition of an "assisted person" is not before the Court.

11

determined from the Court's own docket entries to such effect, are facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" within the meaning of Federal Rule of Evidence 201(b)(2). It is important to note, however, the limitations of what judicial notice permits. See generally Hon. B. Russell, *Bankruptcy Evidence Manual*, 2013 Ed., § 201:5. For example, in Ms. Brown's second case, no. 12-71971, docket entry no. 14 indicates that she filed a motion to dismiss her case. A review of the document in question would also appear to establish that such filing was accurately described as the Debtor's motion to dismiss her case. The facts that the Court's docket indicates that she filed such a motion in that case and that such document is in fact a motion to dismiss the case are not ones whose accuracy can reasonably be questioned and therefore such facts are ones of which the Court may properly take judicial notice. Other evidentiary inferences which the Court might have seen fit to make from this document had it been offered as an exhibit directly, however, do not constitute the type of "facts" of which the Court may take judicial notice because they would not be ones whose accuracy "cannot reasonably be questioned." Accordingly, to determine whether the necessary factual predicate for the Motion has been established by the evidence, the Court must look to the exhibits actually admitted into evidence, those facts of which the Court may properly take judicial notice, and the testimony and any admissions of the parties occurring at the hearings in this matter.

## DISCUSSION

There appear to be few, if any, reported decisions dealing with disputed allegations that some individual or entity has acted as an unacknowledged bankruptcy petition

preparer within the meaning of the Code. This particular case is made even more unusual by the fact that the Debtor has filed three petitions in this Court in as many years in which she acknowledged only in the first case that Financial Associates had assisted her in the preparation of her petition, which acknowledgment was confirmed at the time by Mr. Jennings. In the second case and in this one Ms. Brown has filed documents with the Court asserting that she has received no assistance with her filings. The United States Trustee believes otherwise. From the evidence before the Court in this case, it appears that neither Mr. Jennings nor his corporate business entity has any intention of generally assisting consumer debtors whose principal motivation is to file not just a petition but also the various schedules and other documents which go along with it for the purpose of obtaining a discharge of indebtedness. In fact, there seems to be no indication that the Debtor ever had any intention in any of her cases even to file schedules and a Chapter 13 plan, much less actually to fulfill the obligations under a confirmed plan and obtain a discharge. The only creditor noted in any of them was her residential mortgage lender. The real business of Financial Associates and/or Mr. Jennings, at least as it concerns the Debtor in her cases, rather appears to have been to assist Ms. Brown to obtain a modification of her mortgage loan and that the filing of multiple bankruptcy petitions for the purpose of frustrating the lender's efforts to foreclose and keep the client in possession of her home until the loan modification efforts were either successful or exhausted was simply one part of that overall purpose. Whether that overall purpose, that is to help desperate home borrowers obtain a modification of their mortgage loans, is an appropriate business or service for a non-lawyer to engage in or provide for remuneration is not before the Court. What is before the Court is whether Mr. Jennings has acted as a bankruptcy petition preparer and/or debt relief agency as

contemplated in the Bankruptcy Code in this case and/or the immediately preceding case despite his protestations to the contrary.  Based on the Findings of Fact made and Conclusions of Law reached in this Decision, the Court is satisfied that Mr. Jennings, albeit in a very limited fashion, has been a bankruptcy petition preparer in this case and therefore also a "debt relief agency" within the definitions of those terms set forth in the Bankruptcy Code.  Furthermore, again in a very limited fashion, that he has given legal advice to the Debtor for which his wholly owned corporate entity was compensated.  It is not at all clear whether Mr. Jennings recognizes that the filing of a bankruptcy petition for the purpose of preventing foreclosure without the intent of actually proceeding with the case so initiated is deemed to be an abuse of the bankruptcy system, even when that filing is used as a technique to aid in what he regards as the beneficial purpose of obtaining loan modifications for clients who want to remain in their homes.

## DECISION

On the basis of the determinations noted above with respect to the activities of Mr. Jennings in the present case, the Motion must be granted, at least in part, because Mr. Jennings has functioned as an undisclosed bankruptcy petition preparer.  No evidence has been offered that this Court has previously made such a finding with respect to Mr. Jennings in any other proceeding, so he will be treated as a "first offender."[7]  The sanction provided in § 110(i)(1) of the Code is mandatory upon the Court, not discretionary.  The Court concludes that no actual damages suffered by Ms. Brown have been established.  Indeed she seems pleased, not

---

[7] The Court is aware that there is another similar motion pending against Mr. Jennings in a separate case, *In re Oliphant*, Case No. 12-70668, but such motion is yet to be determined and will not be taken into account in fixing the remedy which will be fashioned here.

aggrieved, with the services Mr. Jennings has provided to her.  While it is possible that the sanction imposed against the Debtor in this case by the Court could result in actual damage to her, such a possibility seems speculative at this point.  The Court will not attempt to allocate the money paid by Ms. Brown to Financial Associates between those services provided as a functional bankruptcy petition preparer and the apparently successful efforts to obtain for the Debtor a modification of her mortgage loan.  Accordingly, the Court believes that the $2,000 amount set forth in § 110(i)(1)(B)(i) is applicable.  The Court would characterize this amount as in the nature of liquidated damages to be awarded by the Court to the Debtor in connection with a violation of the provisions of § 110 irrespective of whether any actual damages are found to have been incurred.  No claim has been advanced for any attorneys' fees or costs incurred by the United States Trustee with respect to the Motion.

Determining a fine pursuant to § 110(l)(1) and (2) for the violations of § 110(b) - (h) which have occurred in this case presents questions of both discretionary and mandatory requirements.  The Court "may" fine the bankruptcy petition preparer for each violation of subsections (b) - (h), but it "shall triple" any fine so determined upon a finding that, as most clearly presented here, the preparer "prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer."  § 110(l)(2)(D).  A violation of the obligation to disclose the existence and specific identity of a bankruptcy petition preparer necessarily results in a violation also of most of the other requirements of § 110.  Under the unusual circumstances presented here, the Court will not presume bad faith on the part of Mr. Jennings, even though it has been determined that he engaged in actions which under the statute must be treated as "deceptive" without regard to whether he considered them to be such in his

own mind.  On the other hand, it also will make no finding either that his actions were taken in good faith.  He acted as a petition preparer irrespective of his intention or lack of intention to function as such.  For someone to function though as an undisclosed bankruptcy petition preparer, whatever such individual's motives, is a serious matter because it undermines the entire scheme of disclosure and close regulation which the law establishes with respect to such activities.  Accordingly, the Court will impose only one fine with respect to the activities of Mr. Jennings in this case, but will set that fine in the maximum amount of $500 as the failure to disclose was intentional, not inadvertent.  Pursuant to the statutory requirement of § 110(b)(2), that fine must be tripled to $1,500.  Such amount, pursuant to § 110(l)(4)(A), will be payable to the Office of the United States Trustee.

Because the compensation paid by the Debtor was to Financial Associates and the Court has determined that such entity and Mr. Jennings are in effect one and the same, the liability for both the statutory damage award payable to Ms. Brown and the civil fine imposed pursuant to § 110(l) shall be joint and several against Financial Associates and Mark Jennings personally.  An order to such effect shall be entered contemporaneously herewith.

DECIDED this 24th day of January, 2014.

*William F. Stone, Jr.*
UNITED STATES BANKRUPTCY JUDGE